IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN L. MOBLEY, | ) | CASE NO. 1:12-CV-2838 |
| | ) | |
| Petitioner, | ) | JUDGE HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| OHIO DEPT. OF REHABILITATION | ) | |
| AND CORRECTION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Bryan L. Mobley ("Petitioner") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Mobley*, Case No. 2009-CR-0484-D (Richland County March

11, 2010).  (03/11/2010 Amended Sentencing Entry, Doc. No. 15-1 at Ex. 1.)  For the

reasons set forth below, it is recommended that the petition be dismissed with

prejudice.

## I. Relevant Factual Background

The state appellate court reviewing Petitioner's direct appeal recited the following

relevant facts:

> Deborah Tolley and appellant had been married for nearly
> twenty-five years. The couple had three adult children: Josh,
> who was in the Army; Caleb, who was living with his father;
> and Jennifer, who lived in Ashland Ohio with her own family.
> Deborah had separated from her husband when they argued

over him going to Seattle, Washington to look for work.
Appellant went to Seattle to look for work as a bricklayer due
to the poor local economy. Ms. Tolley was opposed to the
separation. Although she was the first to visit a divorce
attorney, he actually came back from Seattle and was the
one to first file for divorce. On June 18, 2009, appellant and
Ms. Tolley had been divorced for approximately six months.
Deborah Tolley was in the process of moving from her
apartment to her boyfriend's residence.

Shortly after 1:00 p.m., appellant drove to Fin, Feather &
Fur, a sporting goods store in Ashland, Ohio. After perusing
the gun section for a period of time, he purchased a Taurus
9mm handgun and a box of hollow point ammunition. He
then visited his daughter and grandchildren. While visiting
with his daughter, he learned of his ex-wife's plans to move
in with her new boyfriend. This angered him, and, with the
loaded gun he had just purchased, he began driving around
to find his wife. Appellant first drove by her sister's house,
where he thought she might be staying. When he did not
find her there, he drove to her apartment on Piper Road,
where Ms. Tolley was packing her belongings.

Appellant knocked on the door of his ex-wife's apartment
with the loaded gun and a brochure about their son's
graduation from boot camp. He planned to use the brochure
as a ruse to get Ms. Tolley to open the door. Appellant
knocked on the door. Deborah Tolley looked out the
peephole and saw appellant with paperwork in his hand. She
had not spoken to appellant since the divorce, and did not
intend on opening the door on that day because she was
afraid of him. Instead, she retreated to the bathroom and
called 911.

Appellant knew someone was inside because he saw the
peephole darken. He became furious that his ex-wife was
defying him by refusing to answer the door. As a result, he
began firing the gun through the door. Appellant then shot
off the doorknob and locking mechanism and forced his way
inside.

*   *   *

Appellant was standing a few feet away from [Deborah]
when he raised the gun and fired one shot. Ms. Tolley raised

2

her hand to defend herself, and as a result, the bullet blew off her thumb and deflected into her abdomen.

After she was shot, Deborah pleaded with appellant to take her to the hospital to get some help, telling him that they could talk about their relationship. Appellant told her that if she dropped her cell phone he would take her to the hospital. Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car.

\*   \*   \*

Deborah's neighbors called 911 to report the shooting, and to give a description of the vehicle and its direction of travel. Coincidently, on that same day, the Violent Fugitive Task Force was in Richland County serving warrants. . . .   When they observed a vehicle matching the description provided, with a female passenger slumped in the front seat and a male driver, they blocked off the roadway and ordered the male occupant out of the car at gunpoint.

\*   \*   \*

After appellant was restrained, officers looked into the vehicle and found Deborah Tolley bleeding profusely from a gunshot wounds to her abdomen and thumb. The officers also noticed the loaded Taurus 9mm handgun on the floor where appellant had been reaching prior to being removed from the vehicle.

Deborah Tolley was rushed to the hospital, where she underwent surgery. As a result of her injuries, a portion of her thumb was amputated, and portions of her small and large intestines were removed.

\*   \*   \*

Appellant was indicted by the Richland County Grand Jury for one count of attempted aggravated murder, one count of attempted murder, one count of kidnapping, one count of aggravated burglary, on count of discharging a firearm into a habitation, and one count of felonious assault. The indictment also contained a three-year firearm specification and a forfeiture specification for the vehicle that appellant

3

drove during the commission of the offenses.

On July 29, 2009, appellant's counsel filed a motion indicating that appellant intended to pursue a plea of not guilty by reason of insanity. As a result of that plea, Dr. James Sunbury of the District V Forensic Diagnostic Center evaluated appellant. His August 25, 2009 report indicated that appellant was not suffering from any severe mental disease or defect that would have caused him not to know the wrongfulness of his acts. Appellant was also evaluated by defense expert, Dr. Douglas Lehrer, who reported that although appellant was suffering from a disabling depressive disorder, that disorder did not affect appellant's ability to know the wrongfulness of his acts. As a result of these opinions, the State filed a motion in limine to exclude the defense from presenting expert and lay witness testimony regarding diminished capacity. At a hearing held on the morning of trial, the trial court granted the State's motion with respect to Dr. Lehrer's testimony; however, the court permitted the defense to offer lay witness testimony regarding appellant's state of mind at the time of the shooting.

\*   \*   \*

[After trial, during which appellant, as well as his children and sister, testified regarding his emotional condition at the time of the shooting,] the jury found appellant guilty of attempted aggravated murder, aggravated burglary, felonious assault, discharging a firearm into a habitation, and both the firearm and forfeiture specifications. The jury found appellant not guilty of the charge of kidnapping.

The trial court sentenced appellant to ten (10) years on the attempted aggravated murder charge, ten (10) years on the aggravated burglary charge, one (1) year on the discharging a weapon into a habitation charge, and three (3) years on the firearm specification. These sentences were run consecutive for an aggregate sentence of twenty-four (24) years in prison.

*State v. Mobley*, No. 2010-CA-0018, 2011 WL 304360 (Ohio App. Ct. Jan. 26, 2011)

("*Mobley I*").

4

## II. Relevant State Procedural History

**A.    Direct Appeal**

In February 2010, Petitioner, through counsel, filed a notice of appeal from the state trial court's judgment.  (Doc. No. 15-1 at Ex. 13.)  On appeal, Petitioner raised, *inter alias*, the following assignments of error:

> I.    The trial court erred prejudicially by granting the prosecution's Motion in Limine to exclude the testimony of defense witness Dr. Lehrer, who would have testified to psychological factors relevant to the accused's mental state at the time of the commission of the alleged criminal offenses.
>
> *    *    *
>
> IV.    Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Section Ten of the Ohio Constitution.

(Doc. No. 15-1 at Ex. 14.)[1]  With respect to his claim that he was denied the effective assistance of counsel, Petitioner asserted that his trial counsel had been ineffective in failing to, *inter alias*: (1) put forth a defense that, at the time of the shooting, Petitioner was mentally ill or functionally unconscious as a result of his  medication; and (b) pursue the alternative defense theories of accident, negligence or recklessness.  (*Id.*)

In January 2011, the state appellate court affirmed the judgment of the trial court. *Mobley I*, 2011 WL 304360 at ** 5-9, 14-18.  Thereafter, Petitioner, through counsel, filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme Court, in which he reiterated the claims raised in his direct appeal.  (Doc. No.

---

[1] The second and third assignments of error in Petitioner's direct appeal are not relevant to his habeas petition.

5

15-1 at Exs. 16, 17.)  In May 2011, the Ohio Supreme Court declined jurisdiction and dismissed the appeal.  *State v. Mobley*, 947 N.E.2d 684 (Table), 128 Ohio St.3d 1501 (Ohio 2011).

**B.     Petition to Set Aside or Vacate Sentence**

In July 2010, while his direct appeal was still pending, Petitioner, *pro se*, filed a petition to set aside or vacate his sentence pursuant to Ohio Revised Code § 2953.21, in which he asserted that his trial counsel was ineffective in failing to, *inter alias*, offer the testimony of Richland County Jail nurse Crystal Harris, Richland County Jail clergyman Lee Beer, and Dr. Lehrer.  (Doc. No. 15-1 at Ex. 20.)  In support of his application, Petitioner submitted: (1) a March 2010 letter from Beer, describing his relationship with Petitioner, offering his opinion regarding Petitioner's character, and stating that he was "not allowed to be a character witness" at Petitioner's trial, despite offering to do so; and (2) a November 30, 2009 letter from Lehrer to Petitioner's trial counsel, in which Lehrer reports the results of his psychiatric examination of Petitioner, and speculates that Petitioner's actions may have been caused by medications he was taking for depression and insomnia.  (*Id*.)

In September 2010, the trial court denied the § 2953.21 petition on the merits.  (Doc. No. 15-1 at Ex. 24.)  Petitioner filed a notice of appeal from the trial court's decision, and, on appeal, argued that the trial court abused its discretion in denying his claims for relief based on ineffective assistance of counsel.  (Doc. No. 15-1 at Exs. 25, 26.)

In July 2011, the state appellate court affirmed the trial court's decision denying

6

Petitioner's § 2953.21 petition. (Doc. No. 15-1 at Ex. 28.) Petitioner filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court. (Doc. No. 15-1 at Exs. 29, 30.) In November 2011, the Ohio Supreme Court declined jurisdiction and dismissed the appeal. (Doc. No. 15-1 at Ex. 32.)

## C.    Application for Reopening

In April 2011, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B) ("Rule 26(B)"). (Doc. No. 15-1 at Ex. 33.) He argued that his appellate counsel was ineffective in failing to raise the following issues on direct appeal:

> I.    Due process of law violations which occurred when Defendant-Appellant's trial counsel failed to contact Lee R. Beer and Douglas S. Lehrer, MD, as potential witnesses at the sentencing hearing.
>
> II.    The Trial Court erred in sentencing Appellant for a violation of R.C. § 2903.02(A) & R.C. 2923.02(A) [attempted murder] and as well as for a violation of R.C. 2903.11(A)(2) [felonious assault], as the same were subject to merger and as not merging the same violated Double Jeopardy.

(*Id*.) In support of his application, Petitioner submitted the March 2010 letter from Beer and the November 30, 2009 letter from Lehrer that had accompanied his § 2953.21 petition. (*Id*.)

In May 2011, the state appellate court denied Petitioner's Rule 26(b) application, finding that he had failed to raise any genuine issue with respect to whether he received ineffective assistance of appellate counsel. (Doc. No. 15-1 at Ex. 35.) Petitioner filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme

Court.  (Doc. No. 15-1 at Exs. 36, 37.)  In September 2011, the Ohio Supreme Court

declined jurisdiction and dismissed the appeal.  (Doc. No. 15-1 at Ex. 38.)

**D.**    **Motion to Correct Illegal Sentence**

In August 2011, Petitioner filed a motion to correct his sentence in the state trial

court, arguing that the trial court had erred in imposing "consecutive sentences for allied

offenses of similar import (Attempted Aggravated Murder, Aggravated Burglary,

Discharging a Firearm in to [*sic*] a Habitation, and Attempted Aggravated Murder[)]."

(Doc. No. 15-1 at Ex. 39.)  Thereafter, the trial court denied the motion, finding that

each of the relevant offenses was "a separate and distinct act that was part of a course

of conduct."  (Doc. No. 15-1 at Ex. 42.)  The trial court also noted that, in his direct

appeal, Petitioner had conceded that the offenses were not allied offenses of similar

import, and concluded that, thus, his claim was barred by *res judicata*.  (*Id*.)

Petitioner appealed from the state trial court's decision.  (Doc. No. 15-1 at Ex.

43.)  He raised the following assignment of error:

> The trial court committed an error of law when it did not
> grant Mr. Mobley's "Motion to Correct Status of Illegal
> Sentence."

(Doc. No. 15-1 at Ex. 44.)  In March 2012, the state appellate court affirmed the

decision of the trial court.  *State v. Mobley*, No. 11CA83, 2012 WL 762239 (Ohio App.

Ct. March 7, 2012) ("*Mobley II*").  Petitioner filed a notice of appeal and a memorandum

in support of jurisdiction in the Ohio Supreme Court.  (Doc. No. 15-1 at Exs. 48, 49.)  In

June 2012, the Ohio Supreme Court declined jurisdiction and dismissed the appeal.

*State v. Mobley*, 969 N.E.2d 271 (Table), 132 Ohio St.3d 1424 (Ohio 2012).

## III. Proceedings in This Court

On November 14, 2012, Petitioner filed his § 2254 petition in this Court.  (Doc. No. 1.)  He raises the following grounds for relief:

> I. The trial court erred prejudicially by granting the government['']s Motion in Limine to exclude the testimony of defense witness Dr. Lehrer, who would have testified to psychological factors to the accused's mental state at the time of the commission of the alleged offenses.

> II. Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

> III. Petitioner was sentenced for Attempted Murder and Felonious Assault, as the same were subject to merger and as not merging the same violated Double Jeopardy under the Fifth Amendment to the United States Constitution.

> IV. Due process of law violations occurred when petitioner's court-appointed counsel failed to contact Lee R. Beer and Douglas S. Lehrer, M.D., as potential witnesses at the sentencing hearing.

> V. Petitioner was denied effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

(*Id*.)[2]  The parties have completed briefing in this matter.  (Doc. Nos. 15, 21, 22.)

---

[2]   When he filed his § 2254 petition, Petitioner also filed a motion to stay proceedings, on the basis that he had not yet exhausted his claims in state court.  (Doc. No. 2.)  Petitioner's argument on this point arose out of the fact that, in August 2012, he filed a "motion for issuance of a final appealable order" in the state trial court, in which he contended that the trial court had never issued a final order in his case because its sentencing order did not specify the amount of restitution he was required to pay his ex-wife, or the manner in which he was to pay it.  (Doc. No. 15-1 at Ex. 52.)  That motion was pending in state court in November 2012, when Petitioner filed his § 2254 petition.  On November 14, 2012 – the same date on which Petitioner filed his § 2254 petition in this

Accordingly, the petition is ready for decision.

### IV. Procedural Issues

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Richland County, Ohio sentenced Petitioner.  (Doc. No. 15-1 at Ex. 1.)  Richland County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

**B.     Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d

---

Court – the state trial court issued an order denying the motion on the basis that Petitioner's argument was barred by *res judicata.*  (Doc. No. 15-1 at Ex. 55.)  In March 2013, this Court denied Petitioner's motion for a stay, and dismissed the petition without prejudice to reopening after Petitioner exhausted his state court remedies.  (Doc. Nos. 4, 5.)  In April 2013, Petitioner filed a motion to reopen these proceedings, which this Court granted in May 2013.  (Doc. Nos. 6, 9.)

878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

11

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982).  However,  if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

This Court may review a procedurally defaulted claim only if the petitioner can demonstrate cause and prejudice for the default*, see Gray*, 518 U.S. at 162 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[3] for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."), or that this Court's failure to review the merits of his claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.

Here, the State argues that Petitioner's  first, third and fourth grounds for relief are not exhausted because Petitioner failed to fairly present them to the state courts and that the claims are procedurally defaulted.

---

[3] The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

1.      **First Ground for Relief - Trial Court's Exclusion of Lehrer's
        Testimony**

In his first ground for relief, Petitioner argues that the state trial court erred in
excluding the testimony of Dr. Lehrer.  In support of this claim, Petitioner notes that, in
his report to trial counsel, Dr. Lehrer concluded that, at the time of the shooting,
Petitioner was suffering from "a disabling depressing [*sic*] disorder without which the
events of June 18 would almost certainly not have happened."  (Doc. No. 1 at 10.)  In
his Traverse, Petitioner contends that the state trial court's decision deprived him of his
federal constitutional right to present a complete defense to the charges against him.
(Doc. No. 21 at 11-16.)  In its Return of Writ, the State argues that, although Petitioner
raised the issue of the trial court's exclusion of Dr. Lehrer's testimony in his direct
appeal, he did so in the context of Ohio law, without arguing that the exclusion violated
his federal constitutional rights.  Thus, according to the State, Petitioner failed to fairly
present this federal constitutional claim to the state courts.

Fair presentment of a claim in a federal constitutional context requires a
petitioner to apprise the state courts that his claim is a federal claim, rather than "merely
. . . an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.
1984).  Here, in his argument regarding the trial court's exclusion of Dr. Lehrer's
testimony, Petitioner cited to, and discussed, Ohio legal authority that prohibits the
introduction of expert psychiatric testimony unrelated to the insanity defense, a tenet
known as the *Wilcox* rule, after the case in which the issue was first decided by the

13

Ohio Supreme Court.[4]  (Doc. No. 15-1 at Ex. 14 at 8-12.)  In the portion of his state

appellate brief addressing this issue, Petitioner made no reference to the United States

Constitution or federal case law until the end of the argument, when, in an attempt to

distinguish his case from *State v. Thomas*, No.06AP-675, 2007 WL 778606 (Ohio App.

Ct. March 15, 2007) (an Ohio decision regarding the admission of expert testimony in

this context), Petitioner argued:

> This case, unlike *Thomas*, involves solid, affirmative
> evidence relevant to the issues in the case that the jury
> never got to hear.  The *Thomas* court spoke to the
> procedural fairness guaranteed to the accused in such
> circumstances.  It wrote that the opportunity to be heard is
> an essential component of procedural fairness: "The
> Constitution guarantees criminal defendants a meaningful
> opportunity to present a complete defense." [*Thomas*] at
> 11 citing *Spisak v. Mitchell* (2006), 465 F.2d 684, 692,
> quoting *Crane v. Kentucky* (1986), 476 U.S. 683, 690.
>
> Having the opportunity to be heard is the essential
> component of procedural fairness.  All the Appellant seeks is
> the opportunity to be heard, and to present his case.  This
> court should require no less.

(Doc. No. 15-1 at Ex. 14 at 13.)

Petitioner's appellate brief, standing alone, would be insufficient to alert the state

courts to the federal dimensions of his claim.  *See, e. g., Anderson v. Harless*, 459 U.S.

---

[4] In *State v. Wilcox*, 436 N.E.2d 523, 527, 70 Ohio St.2d 182, 188-89 (Ohio 1982), the Ohio Supreme Court noted that Ohio's test for determining whether a defendant is not guilty by reason of insanity is "considerably more flexible" than the traditional M'Naghten rule, and declined to adopt a diminished capacity defense because that defense "could swallow up the insanity defense and its attendant commitment provisions."  Because such a defense is not available in Ohio, "a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime."  436 N.E.2d at 533, 70 Ohio St.2d at 199.  In his state court appellate brief, Petitioner attempted to distinguish his case from *Wilcox* and its progeny in Ohio courts.

4, 7, n.3 (1982) ("We doubt that a defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.").  However, in its decision affirming the trial court's judgment in this case, the state appellate court, citing to federal case law, concluded that the exclusion of Dr. Lehrer's testimony did not "'significantly undermine[] fundamental elements of the accused's defense'" because Petitioner was still permitted to present factual evidence regarding the charged offenses.  *Mobley I*, 2011 WL 304360 at *8 (quoting *Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998)).[5]  The state appellate court's reliance on *Wong* reflects not only that the court treated Petitioner's claim as asserting federal constitutional rights, but also that it considered the federal constitutional element of Petitioner's claim, and rejected it.  Accordingly, the State's contention that Petitioner failed to fairly present his first ground for relief to the state courts is incorrect, and this claim will be considered on the merits.

### 2.  Third (Merger) and Fourth (Ineffective Trial Counsel at Sentencing) Grounds for Relief

In this third ground for relief, Petitioner contends that the trial court violated the Double Jeopardy Clause by failing to merge his convictions for attempted aggravated murder and felonious assault as allied offenses of similar import and by sentencing him

---

[5] The state appellate court's decision refers to *Wong* using the incorrect name – *United States v. Wong*.  *See Mobley I*, 2011 WL 304360 at *8.  However, the citation is otherwise correct, and the quoted text appears at the location identified in the citation.  In *Wong*, the Sixth Circuit concluded that the United States Constitution did not obligate the State of Ohio to recognize the diminished capacity defense, or to permit the introduction of expert evidence regarding the *mens rea* element in cases not involving a plea of not guilty by reason of insanity.  *Wong*, 142 F.3d at 326.

to separate consecutive sentences for those offenses.  In his fourth ground for relief,
Petitioner contends that he received ineffective assistance of counsel when his trial
counsel failed to call Beer and Dr. Lehrer to testify at the sentencing phase of his
criminal proceedings.  The State correctly notes that, although Petitioner asserted in his
Rule 26(B) petition that his appellate counsel was ineffective in failing to raise these
claims on direct appeal, Petitioner failed to raise these arguments as independent
grounds for relief in state court.[6]  Further, Petitioner's third and fourth grounds for relief
are also procedurally defaulted for the reasons discussed below.

  The error at issue in Petitioner's third ground for relief – the trial court's failure to
merge his convictions for attempted aggravated murder and felonious assault –  arises
out of the record of proceedings in the trial court, and, thus, Petitioner could have raised
it on direct appeal.  He failed to do so[7] and, under Ohio law, *res judicata* now prohibits
him from raising the issue in any post-conviction proceeding.  *See State v. Cole*, 443
N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10
Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from
raising in post-conviction proceedings those claims that could have been raised on

---

  [6] Presentation of claims in the context of ineffective assistance of counsel is not
sufficient to "fairly present" them as independent grounds to the state courts.  *See, e.g.,
Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to
exhaust a prosecutorial misconduct claim where he presented it to the state courts in the
context of ineffective assistance of counsel, noting that doing so "did not present the
*prosecutorial misconduct* claim to the state court in the same legal and factual terms as
Petitioner did before this Court") (emphasis in original)

  [7] Indeed, in his direct appeal, Petitioner conceded that "the offenses were [not]
technically allied offenses of similar [import], as there are obviously different elements
involved."  (Doc. No. 15-1 at Ex. 14 at 14.)

direct appeal). Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of this issue.

Further, even if this Court were to construe Petitioner's argument to assert that his appellate counsel's failure to raise the issue on direct appeal constitutes cause for his procedural default, such an argument would lack merit for the reasons set forth in Section V(C), *infra* (discussing ineffective appellate counsel).

In his fourth ground for relief, Petitioner contends that his trial counsel was ineffective in failing to offer the testimony of jail clergy Beer and Dr. Lehrer at his sentencing hearing. Ohio law provides a mechanism through which a criminal defendant may raise a claim of ineffective assistance of trial counsel. *See* Ohio Rev. Code § 2953.21.[8] Petitioner has not availed himself of this procedure with respect to this fourth ground for relief. Although he argued, in his post-conviction petition, that his trial counsel was ineffective in failing to obtain Beer and Dr. Lehrer's testimony, Petitioner did not specify whether the error occurred at trial or sentencing. The trial court analyzed Petitioner's claim in the context of his counsel's failure to adduce the relevant testimony at trial. It was only in the brief in his appeal from the trial court decision denying his petition for post-conviction relief that Petitioner specified that his trial counsel's error occurred at sentencing rather than at trial. The state appellate court considered the claim in the context of trial, and concluded that the claim was barred by

---

[8] Generally, under Ohio law, *res judicata* bars a defendant from raising a claim of ineffective assistance in proceedings under Ohio Rev. Code 2953.21 where that defendant could have raised the claim on direct appeal. *See* Perry, 226 N.E.2d 104, 10 Ohio St.2d 175, ¶ 7 of the syllabus. However, Ohio courts have recognized that *res judicata* does not apply where, as here, a defendant's claim relies on evidence outside the record. *State v. Smith*, 477 N.E.2d 1128, 1131, n.1., 17 Ohio St,3d 98, 101, n.1. (Ohio 1985).

17

*res judicata*.  Accordingly, neither the state trial court nor the state appellate court has considered Petitioner's argument that his trial counsel was ineffective in failing to adduce Beer and Lehrer's testimony at sentencing, and, thus, the claim is not exhausted.

Further, Petitioner may no longer raise this claim in the context of sentencing in state court.  The relevant Ohio statute requires[9] defendants to file a motion for post-conviction relief within 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal."  Ohio Rev. Code § 2953.21(c)(2).  Accordingly, such a claim is procedurally defaulted.  *See, e.g., Rolling v. Muiligan*, No. 1:12-CV-1007, 2012 WL 3961214 (N.D. Ohio Sept. 10, 2012) (Gaughan, J.) (finding procedural default where the petitioner's state court motion for post-conviction relief would be untimely and neither exception would apply to excuse the untimeliness).

Petitioner offers no argument regarding any cause for, or prejudice resulting from,

---

[9]Petitioner cannot avail himself of the two statutory exceptions to the 180-day time limit.  One exception requires the defendant to show that he was "unavoidably prevented from discovery of the facts" upon which his claim for relief was based or that his claim is based on a newly-recognized federal or state right that applies retroactively.  *See* Ohio Rev. Code § 2953.23(b)(2).  Given that Petitioner raised the issue of his trial counsel's ineffectiveness as early as February 2010 – and that the letters from Beer and Dr. Lehrer are dated March 2010 and November 2009, respectively, he cannot now claim that he only recently discovered the facts on which it is based.  Nor does he allege – and, given the well-established nature of the right to counsel, he cannot show – that his ineffective assistance claim is based on a newly-recognized federal or state right.  Accordingly, this first exception will not permit Petitioner to raise his ineffective assistance of counsel claim in a state court post-conviction proceeding.  Further, the second exception – which permits late filing where the defendant's claim is based on results of DNA testing, *see* Ohio Rev. Code § 2953.23(b)(2) – clearly does not apply in this case.  Given that neither exception would apply to excuse Petitioner's untimely filing of a motion under § 2953.21, it would be futile for him to return to state court to pursue this claim.

his procedural default of his fourth ground for relief.[10]  Accordingly, there is no excuse

for, or exception to, his procedural default, and this claim is barred from federal habeas

review.

### V. The Merits of Petitioner's Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a
> decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State
> court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

---

[10]Petitioner may not excuse his default by an ineffective assistance of appellate counsel claim.  In his Rule 26(B) application, Petitioner argued that his appellate counsel was ineffective in failing to argue, on direct appeal, that his trial counsel ineffectively failed to adduce the testimony of Beer and Dr. Lehrer at sentencing.  (Doc. No. 15-1 at Ex. 33.) The state appellate court rejected this argument because the claim was based on material outside of the record.  (Doc. No. 15-1 at Ex. 35 at 4.  Petitioner raised an ineffective assistance of trial counsel claim in his § 2953.21 petition, but did not specify whether the alleged error occurred at trial or at sentencing.  As discussed, *supra*, the trial and appellate courts understood the claim to address the omission of evidence at trial.

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and

unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S.

510, 520 (2003).  "In order for a federal court to find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been

more than incorrect or erroneous.  The state court's application must have been

objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks

omitted).  This Court applies this deferential standard of review to the state courts'

rulings on Petitioner's remaining grounds for relief.

## A.      First Ground for Relief - Trial Court's Exclusion of Dr. Lehrer's Testimony

In his first ground for relief, Petitioner asserts that the trial court violated his fundamental right to present a complete defense by excluding the testimony of Dr. Lehrer at trial.  In its decision affirming his conviction and sentence, the state appellate court concluded that, in applying Ohio law excluding expert testimony in the circumstances of Petitioner's case, the trial court had not deprived Petitioner of the ability to present his defense:

> The application of the *Wilcox* rule in the case at bar has not "significantly undermined fundamental elements of the accused's defense." [*Wong*, 142 F.3d at 325].  In the case at bar the trial court did not preclude appellant from introducing any factual evidence; i.e. facts' [*sic*] about the alleged crime at hand.  Rather, the trial court precluded appellant from offering *expert* testimony, unrelated to the insanity defense, to show that he lacked the necessary mental capacity to form the specific mental state required for the crimes. Additionally, the trial court's ruling did not prohibit appellant from testifying on his own behalf; appellant freely chose to do so in this case. [*Wong*], supra.

> In the case at bar, the trial court permitted the defense to offer testimony from lay witnesses regarding the circumstances surrounding the shooting and appellant's behavior before he went to the victim's apartment. (T. at 19). In accordance with that ruling, the defense called appellant's co-workers, John Clow and Joshua Holland, his children, Caleb Mobley, Jennifer Mobley, and Joshua Mobley, his sister, Elaine Brown, and Corrections Officer Jeffrey Shanyfelt. Appellant's coworkers, children, and sister testified that appellant was depressed and anxious over his financial situation before he went to Washington to find work, and that his mental state deteriorated further after the divorce, causing him to seek treatment and take medication. (T. at 391-392; 396-397; 400-403; 411-414; 416-418; 422; 424-425). Furthermore, Corrections Officer Shanyfelt testified that when appellant was booked into the jail after the shooting, he was very subdued. As a result, he was

21

> placed on suicide watch. (T. at 408-409). Appellant also took
> the stand and testified about his feelings regarding the
> divorce, his mental state on the day of the shooting, and the
> effects of the medication he was taking. (T. at 432-456).
> Appellant was acquitted of the kidnapping charge based on
> his own testimony and the testimony of the victim that she
> had asked him to take her to the hospital, and he intended
> to drive her to the hospital after he shot her. (T. 155-158,
> 174-176; 448-451).

Mobley I, 2011 WL 304360 at **8-9.

In its response to the petition, the State correctly notes that the Sixth Circuit has

previously concluded that an Ohio trial court does not violate a defendant's

constitutional rights when it excludes expert evidence that is insufficient to support that

defendant's insanity defense.  *See, e.g.,* Spisak v. Mitchell, 465 F.3d 684, 695-96 (6th

Cir. 2006), reversed on other grounds by, Smith v. Spisak, 558 U.S. 139 (2010);

Matlock v. Rose, 731 F.2d 1236 (6th Cir. 1984) (considering the issue pre-AEDPA).[11]

Petitioner, however, contends that the issue he asserts in his § 2254 petition is not

whether the trial court violated his constitutional rights by excluding evidence that was

---

[11]In *Spisak*, the defendant did not argue that he was entitled to a diminished capacity defense.  Rather, the defendant in *Spisak* contended that the trial court had erroneously concluded that his expert's testimony was irrelevant and prejudicial.  The Sixth Circuit reviewed the trial court's reasoning and concluded that, because the relevant testimony would not have satisfied Ohio's standard for an insanity defense, the trial court had not unreasonably applied clearly established law, or violated the defendant's constitutional rights.  Spisak, 465 F.3d at 696-67.  Similarly, in *Matlock*, the defendant argued that the trial court violated his constitutional rights by excluding expert testimony that, at the time of his offenses, he knew right from wrong only at the level of an eight or nine-year old child.  The Sixth Circuit rejected the argument, determining that the trial court's ruling had not deprived the defendant of a fundamentally fair trial because the testimony would have supported, rather than refuted, the conclusion that defendant could appreciate the wrongfulness of his conduct, and, thus, was insufficient to establish the relevant standard for an insanity defense. Matlock, 731 F.2d at 1242-43.

insufficient to support an insanity defense, but, rather, whether Ohio's *Wilcox* rule –

which prohibits a defendant from asserting a diminished capacity defense, and, thus,

precludes the admission of expert testimony on the issue of *mens rea* where that

testimony does not establish that the defendant satisfied the standard for an insanity

defense – violates a defendant's constitutional right to present a complete defense.

In *Wong*, the defendant "ask[ed] . . . [the Sixth Circuit] to impose, as a matter of

federal constitutional law, an obligation upon the State of Ohio to recognize the defense

of diminished capacity." 142 F.3d at 323.  The Sixth Circuit declined to do so, reviewing

United States Supreme Court decisions on the issue of diminished capacity and noting

that the Court had "'twice refused to impose'" the theory of diminished capacity on the

states.  *Id*. at 324 (quoting *Muench v. Israel*, 715 F.3d 1124, 1141 (7th Cir. 1983)).  The

Sixth Circuit concluded that the state trial court's application of the *Wilcox* rule had not

"'significantly undermined fundamental elements of the accused's defense,'"  *Id*. at 325

(quoting *United States v. Scheffer*, 523 U.S. 303 at 315 (1998)).  The Sixth Circuit

noted that the *Wilcox* rule had neither prevented the defendant from introducing factual

evidence regarding the alleged crime, nor prohibited her from testifying on her own

behalf, and, thus, did not sufficiently abridge the defendant's ability to defend herself

such that the rule violated her constitutional right to a complete defense.  *Id*. (citing

*Scheffer*, 523 U.S. at 316-17.)

In this case, the state appellate court applied the Sixth Circuit's reasoning in

*Wong* and noted that "the trial court permitted the defense to offer testimony from lay

witnesses regarding the circumstances surrounding the shooting and appellant's

23

behavior before he went to the victim's apartment." *Mobley I*, 2011 WL 304360 at *9.

Further, the appellate court pointed out that Petitioner "took the stand and testified

about his feelings regarding the divorce, his mental state on the day of the shooting,

and the effects of the medication he was taking." *Id*.  Petitioner does not address the

Sixth Circuit's decision in *Wong*.  Nor does he explain how the state appellate court

unreasonably applied its holding in his case.  Because the state appellate court's

analysis is a correct and reasonable application of established federal constitutional

case law on this issue, this ground for relief lacks merit, and should be dismissed.

**B.      Second Ground for Relief - Ineffective Assistance of Trial Counsel**

In his second ground for relief, Petitioner asserts that he received ineffective

assistance of trial counsel.  (Doc. No. 1.) In his Traverse, Petitioner specifically argues

that his trial counsel was ineffective in failing to pursue a conviction for the lesser-

included offense of reckless homicide.  (Doc. No. 21 at 16-17.)

In assessing claims of ineffective assistance of counsel, courts apply the familiar

standard of *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner

to demonstrate both that his counsel's performance was deficient, and that the allegedly

ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was
> so defective as to require reversal of a conviction or death
> sentence has two components. First, the defendant must
> show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial

whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to *de novo* review."

*Combs. v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

In deciding Petitioner's claim on this issue, the state appellate court cited to *Strickland*.  *See Mobley I*, 2011 WI 304360 at *12.  The trial court reviewed the relevant law and the testimony at trial and concluded that the evidence did not support a reckless homicide theory:

R.C. 2903.041, the reckless-homicide statute, provides "(A) No person shall recklessly cause the death of another * * *." A definition of "recklessly" appears in R.C. 2901.22(C): "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Reckless homicide is a lesser-included offense of aggravated felony murder. *State v. Trimble,* 122 Ohio St.3d 297, 911 N.E.2d 242, 2000-Ohio-2961 at ¶ 190.

Even though an offense may be a lesser-included offense, a charge on the lesser offense is required "only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. The lesser-included-offense instruction is not warranted every time "some evidence" is presented to support the lesser offense. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. Rather, a court must find "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sics.) *Id.* at 632-633, 590 N.E.2d 272.

25

There simply is no evidence upon which the jury could find that appellant recklessly attempted to kill Deborah Tolley. Appellant purchased a handgun on the day in question. Appellant fired that gun through the front door of Deborah Tolley's apartment. He then shot off the doorknob and locking mechanism and forced his way inside. He was standing a few feet away from Deborah when he raised the gun and fired one shot. Appellant told her that if she dropped her cell phone he would take her to the hospital. Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car. Based upon the record, there was no reasonable basis for the jury to find that appellant recklessly shot at Ms. Tolley.

*Id*. at *18.  The appellate court concluded that Petitioner had failed to demonstrate either that his counsel had provided deficient representation or that Petitioner had been prejudiced by his counsel's performance.  *Id*.

Petitioner argues that the state appellate court incorrectly concluded that there was no evidence to support a reckless homicide theory.  Specifically, he contends that, given trial testimony regarding his mental state, "including evidence of depression, prescription drug use and mental health treatment," the jury could have concluded that he "was not guilty of attempted aggravated murder . . . but guilty only of reckless-attempted homicide because of the known risk of being emotionally stressed which resulted in serious physical harm [to] his ex-wife." (Doc. No. 21 at 20.)  According to Petitioner, had his trial counsel requested an instruction on reckless homicide, the result "most likely" would have been "a conviction of reckless-attempted-homicide." (*Id*.)

The evidence at trial did not support a reckless homicide theory.  As described by the state appellate court, the evidence at trial demonstrated that Petitioner acted with an intent that precludes a finding of recklessness.  Although Petitioner contends that his

26

emotional problems and use of psychiatric medications could somehow contribute to a determination that he acted recklessly, he identifies no Ohio authority permitting or supporting such a theory.  Further, Petitioner does not explain how, in light of the testimony regarding his actions on the day that he shot his ex-wife, the jury at his trial could "reasonably reject" the theory of attempted aggravated murder in favor of attempted reckless homicide.  *See* *Trimble*, 911 N.E.2d at 273, 122 Ohio St.3d at 325 (noting that a court is required to give an instruction on a lesser included offense only where there is sufficient evidence to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense") (internal quotation marks omitted).  Because the evidence at trial did not support the conclusion that Petitioner acted recklessly, his trial counsel was not ineffective in failing to pursue that theory or to request a reckless homicide instruction.  Thus, the state court's determination that Petitioner failed to demonstrate either that his counsel's performance was deficient or that he was prejudiced by his counsel's performance in this context was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and Petitioner's second ground for relief should be dismissed as without merit.

C.    **Fifth Ground for Relief - Ineffective Assistance of Appellate Counsel**

In his fifth ground for relief, Petitioner contends that his appellate counsel was ineffective in failing to raise the claims he asserts in grounds for relief three (merger) and four (ineffective assistance of trial counsel in failing to adduce the testimony of clergy Beers and Dr. Lehrer at sentencing).

27

Petitioner's argument fails the second part of *Strickland* "cause and prejudice" test.  *See* 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").  Petitioner contends that he was prejudiced by his appellate counsel's failure to raise the "merger issue" on direct appeal because the state trial court imposed a sentence for his felonious assault conviction that was concurrent to the other sentences and, thus, violated his right to be free from double jeopardy.  (Doc. No. 21 at 22-23.)  The factual basis for this claim is simply incorrect.  In rejecting Petitioner's claim that his appellate counsel was ineffective in failing to raise this issue on direct appeal, the state appellate court noted that, at sentencing, the trial court merged the sentence for felonious assault into the sentence for attempted aggravated murder.  (Doc. No. 15-1 at Ex. 35 at 4.)  The record demonstrates that the state appellate court was correct, as, at Petitioner's sentencing hearing, the trial court stated as follows:

> Count 1, attempted aggravated murder, ten years in prison;
> Count 2, no conviction; Count 3, you weren't convicted;
> Count 4, ten years in prison, that's aggravated burglary;
> Count 5, which is the discharge into a habitation, I'm adding
> an additional year for that.  *Count 6 is felonious assault, I'm
> not adding a sentence to that, it's an allied offense of similar
> import.*  The total of Counts 1, 4 and 5 are consecutive to
> each other.  There is three years mandatory consecutive
> imprisonment for the gun specification.  That makes your
> total sentence of twenty-four years.

(Transcript of Sentencing ("S. Tr.") at 552, Doc. No. 15-6 (emphasis added)).  The March 2010 sentencing entry also reflects that the trial court did not impose a sentence on Petitioner's conviction for felonious assault.  (Doc. No. 15-1 at Ex. 1.)  Accordingly, Petitioner's contention lacks merit.  *See, e.g, Burt v. Titlow*, 571 U.S. ___, 134 S. Ct.

28

10, 14 (2013) ("The prisoner bears the burden of rebutting the state court's factual findings by 'clear and convincing evidence.'") (quoting 28 U.S.C. § 2254(e)(1)).  Even if appellate counsel erred in failing to raise the merger issue on direct appeal, the outcome of Petitioner's proceedings would not have been different and this basis for Petitioner's claim of ineffective appellate counsel lacks merit.

Similarly, Petitioner cannot prove that he was prejudiced by his appellate counsel's failure to raise trial counsel's failure to adduce the testimony of Beers and Dr. Lehrer at sentencing as a basis for ineffective assistance.  In his Rule 26(B) application, Petitioner argued that his appellate counsel was ineffective in failing to raise such an argument on direct appeal.  (Doc. No. 15-1 at Ex. 33.)  The state appellate court rejected this argument because the claim was based on material outside of the record. (Doc. No. 15-1 at Ex. 35 at 4.  Accordingly, even if Petitioner's trial counsel had raised the claim, the state appellate court would not have considered it, and Petitioner cannot demonstrate that the outcome of his proceedings would have been different had appellate counsel raised this argument.  Thus, the state appellate court did not unreasonably apply the *Strickland* standard in determining that Petitioner's ineffective assistance of appellate counsel claims lacked merit.  Accordingly, this ground for relief should be dismissed as without merit.

**VI. Conclusion**.

For the reasons given above, the petition should be dismissed with prejudice.


Date: January 9, 2014                              /s/ Nancy A. Vecchiarelli
                                                   United States Magistrate Judge

### OBJECTIONS

   Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See **United States v. Walters**, 638 F.2d 947 (6th Cir. 1981)*.  *See also **Thomas v. Arn**, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111*.

30