IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bryan L. Mobley,

                Petitioner,                    Case No. 1:12 CV 2838

       -vs-

                                        MEMORANDUM OPINION
                                        AND ORDER

Ohio Department of Rehabilitation and Correction,

                Respondent.

Bryan L. Mobley has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  The petition was referred to Magistrate Judge Nancy A.Vecchiarelli for findings of fact,

conclusions of law, and recommendations.  The Magistrate Judge issued a report recommending I

deny the petition.  This matter is before me pursuant to Mobley's timely objections to the Magistrate

Judge's report.

In accordance with *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001), I have made

a de novo determination of the Magistrate Judge's report.  For the reasons stated below, I adopt the

report and dismiss Mobley's petition for a writ of habeas corpus.  *See* 28 U.S.C. § 636(b)(1).

## I.  STATE PROCEDURAL HISTORY

The Ohio Court of Appeals summarized Mobley's case as follows:

> Deborah Tolley and appellant had been married for nearly twenty-five years.
> The couple had three adult children:  Josh, who was in the Army; Caleb, who was
> living with his father; and Jennifer, who lived in Ashland Ohio [sic] with her
> own family.  Deborah had separated from her husband when they argued over him going
> to Seattle, Washington to look for work.  Appellant went to Seattle to look for work
> as a bricklayer due to the poor local economy.  Ms. Tolley was opposed to the
> separation.  Although she was the first to visit a divorce attorney, he actually came

back from Seattle and was the one to first file for divorce.  On June 18, 2009, appellant and Ms. Tolley had been divorced for approximately six months. Deborah Tolley was in the process of moving from her apartment to her boyfriend's residence.

Shortly after 1:00 p.m., appellant drove to Fin, Feather & Fur, a sporting goods store in Ashland, Ohio.  After perusing the gun section for a period of time, he purchased a Taurus 9mm handgun and a box of hollow point ammunition.  He then visited his daughter and grandchildren. While visiting with his daughter, he learned of his ex-wife's plans to move in with her new boyfriend.  This angered him, and, with the loaded gun he had just purchased, he began driving around to find his wife.  Appellant first drove by her sister's house, where he thought she might be staying.  When he did not find her there, he drove to her apartment on Piper Road, where Ms. Tolley was packing her belongings.

Appellant knocked on the door of his ex-wife's apartment with the loaded gun and a brochure about their son's graduation from boot camp.  He planned to use the brochure as a ruse to get Ms. Tolley to open the door.  Appellant knocked on the door.  Deborah Tolley looked out the peephole and saw appellant with paperwork in his hand.  She had not spoken to appellant since the divorce, and did not intend on opening the door on that day because she was afraid of him.  Instead, she retreated to the bathroom and called 911.

Appellant knew someone was inside because he saw the peephole darken. He became furious that his ex-wife was defying him by refusing to answer the door.  As a result, he began firing the gun through the door.  Appellant then shot off the doorknob and locking mechanism and forced his way inside.

Once inside, he confronted Deborah Tolley in the hallway outside the bathroom, yelling "You fucking whore, you tore our family apart."  (T. at 154; 464).  Neighbors in the apartment building heard Deborah plead for her life, screaming, "Please no, please don't."  (T. at 189-190; 349; 352).  Appellant was standing a few feet away from her when he raised the gun and fired one shot.  Ms. Tolley raised her hand to defend herself, and as a result, the bullet blew off her thumb and deflected into her abdomen.

After she was shot, Deborah pleaded with appellant to take her to the hospital to get some help, telling him that they could talk about their relationship. Appellant told her that if she dropped her cell phone he would take her to the hospital.  Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car.

Suzanne Stark, who lived in one of the first floor apartments, heard appellant telling Deborah, "Just come on, just come on" in an angry tone of voice as he hurried her out of the building.  From appellant's tone of voice and the fact that he did not apologize or say it was an accident, Suzanne had the impression that appellant was taking Deborah out of the building to kill her somewhere else. Houston Roose, another neighbor who lived in the building, heard appellant telling Deborah Tolley to get to his car, and Deborah responding that she was going to pass out. Once Deborah was in his car, appellant placed the gun on his lap and proceeded to drive down Piper Road to State Route 545.

2

Deborah's neighbors called 911 to report the shooting, and to give a description of the vehicle and its direction of travel.  Coincidently, on that same day, the Violent Fugitive Task Force was in Richland County serving warrants. When the members of the task force heard the dispatch reports regarding the shooting, they immediately responded to the area.  When they observed a vehicle matching the description provided, with a female passenger slumped in the front seat and a male driver, they blocked off the roadway and ordered the male occupant out of the car at gunpoint.

Appellant stopped the vehicle, but did not comply with the officer's orders to raise his hands.  Instead, they saw him reaching toward the floor of the vehicle. When he eventually opened the door, however he [sic] made no move to get out of the vehicle.  The officers had to reach into the vehicle and pull him out onto the ground.  Appellant struggled with the officers who were attempting to place him in handcuffs.

After appellant was restrained, officers looked into the vehicle and found Deborah Tolley bleeding profusely from a gunshot wounds to her abdomen and thumb.  The officers also noticed the loaded Taurus 9mm handgun on the floor where appellant had been reaching prior to being removed from the vehicle.

Deborah Tolley was rushed to the hospital, where she underwent surgery. As a result of her injuries, a portion of her thumb was amputated, and portions of her small and large intestines were removed.

Appellant was transported to the Richland County Jail where he was *Mirandized* and interviewed by Sergeant Donald Zehner of the Richland County Sheriff's Department.  Appellant waived his Miranda [sic] rights and gave a taped statement in which he admitted to purchasing the gun, forcing his way into Deborah Tolley's apartment, and shooting her.  Jeff Shanyfelt was a corrections officer in the Richland County Jail.  He testified that appellant came in on suicide watch and that he was focused on whether or not his ex-wife was okay.

Appellant was indicted by the Richland County Grand Jury for one count of attempted aggravated murder, one count of attempted murder, one count of kidnapping, one count of aggravated burglary, on count of discharging a firearm into a habitation, and one count of felonious assault.  The indictment also contained a three-year firearm specification and a forfeiture specification for the vehicle that appellant drove during the commission of the offenses.

On July 29, 2009, appellant's counsel filed a motion indicating that appellant intended to pursue a plea of not guilty by reason of insanity.  As a result of that plea, Dr. James Sunbury of the District V Forensic Diagnostic Center evaluated appellant. His August 25, 2009 report indicated that appellant was not suffering from any severe mental disease or defect that would have caused him not to know the wrongfulness of his acts.  Appellant was also evaluated by defense expert, Dr. Douglas Lehrer, who reported that although appellant was suffering from a disabling depressive disorder, that disorder did not affect appellant's ability to know the wrongfulness of his acts.  As a result of these opinions, the State filed a motion in limine to exclude the defense from presenting expert and lay witness testimony regarding diminished capacity.  At a hearing held on the morning of trial, the trial

court granted the State's motion with respect to Dr. Lehrer's testimony; however, the court permitted the defense to offer lay witness testimony regarding appellant's state of mind at the time of the shooting.

Appellant's trial commenced on January 14, 2010.  During the trial, the State presented testimony from fifteen witnesses including the victim, Deborah Tolley, neighbors Suzanne Stark, Brittany Nichols, and Houston Roose, and a video deposition from Dr. Anthony Fahmy, who operated on Deborah Tolley after the shooting.

After the State rested on January 20, 2010, the defense began presenting its case.

Caleb Mobley, age 20, testified that when his father came back from Seattle, he was very hurt about the broken family.  Appellant saw two people for his mental problems, a nurse practitioner and a doctor.  He was given prescriptions for his mental issues.  On cross-examination, he stated that both his mother and his father had started seeing other people by the date of the offense.

Elaine Brown appellant's sister testified that he was extremely depressed before he left town to go to Seattle and that he was very stressed out due to financial problems.  When he came back to Mansfield, he was an emotional wreck.  He visited a doctor.  Appellant began to see a second doctor and he seemed to be a little better over the next six or eight weeks.  Ms. Brown testified, "We actually thought that he was getting better.  Not that he wasn't suicidal, but he wasn't so focused on it as much."  [T. at 413].  After being in custody for several months, he seemed better, more clear-minded, more like his old self again. [T. at 414].

Jennifer Mobley, appellant's daughter testified that when he came back from Seattle, appellant was very depressed, and he got progressively worse.  She saw him on the date of the shooting and he was really depressed but not so bad as to give away the fact that he had already bought a gun that day.

Appellant's other son, Joshua Mobley, agreed with the other family members' observations about appellant being depressed and financially stressed out, and to the changes in his demeanor when he returned home to Mansfield.  He testified, "He just-I mean, he obviously wasn't himself, you know."  [T. at 425].

Appellant testified on his own behalf.  At the time of trial, he was 46 years old.  He had graduated high school in Mansfield in 1981, worked for a time in local industry, and became a union bricklayer in 1984, when he married and started a family.  By 2008, the business for bricklayers in the Mansfield area became practically non-existent, and he resolved to go to Seattle to find work as a bricklayer, choosing that locale as one where there was employment.  He left with Josh Holland, and a couple of days after he got there, his wife called him and told him she wanted a divorce.  He was devastated.  Communication with his wife deteriorated, and after several weeks, when his wife called to say she had a prospective buyer for their home, he drove home to Mansfield.

When he got home, his wife moved out, and he stayed in the home with the two boys until it sold in September 2008.  Appellant testified that he started seeing Dr. Jones for his mental condition, who prescribed him medication, and he did begin sleeping better, but his account fell into arrears, so he had to see another doctor, a

4

Dr. Long, who changed his prescription but continued in the same direction of therapy as the first doctor.

On the date in question, appellant started the day by getting a prescription filled. As he put it, "I was feeling like I didn't-didn't have anything to live for." [T. at 441-442]. He went to Fin, Feather & Fur in Ashland, bought the gun, and then went to his daughter's house to see the family. He found out that his ex-wife had started seeing her old high school boyfriend since the divorce and he did not like that, because that man was involved in things of which he did not approve. [T. at 444] He took the Army graduation notice with him and went to his ex-wife's apartment on Piper Road, where he thought he could remember the apartment number. He knocked and when she did not answer the door, he got frustrated:

"I feel like I am being defied by my former wife who had been defiant to me for the past year, year and a half any conversation we ever had from the time I left Washington State has been nothing but derogatory, and condescending. I found myself upset, and I began to fire shots into the door." [T. at 447].

He kicked the door in and stumbled inside as if "in a fog." [T. at 448] Appellant testified at times in the third person, "when there was a shot fired," and "when that shot went off." Afterward, his only thought was of getting this woman that he loved to the hospital to receive the proper medical care. [T. at 448-449] He was stopped at the police barricade, where he was removed and put on the ground in a blinding show of authority and administered "a small beating," in his words.

At the conclusion of appellant's trial, the jury found appellant guilty of attempted aggravated murder, aggravated burglary, felonious assault, discharging a firearm into a habitation, and both the firearm and forfeiture specifications. The jury found appellant not guilty of the charge of kidnapping.

The trial court sentenced appellant to ten (10) years on the attempted aggravated murder charge, ten (10) years on the aggravated burglary charge, one (1) year on the discharging a weapon into a habitation charge, and three (3) years on the firearm specification. These sentences were run consecutive for an aggregate sentence of twenty-four (24) years in prison.

*State v. Mobley*, No. 2010-CA-0018, 2011 WL 304360, at *1–5 (Ohio Ct. App. Jan. 26, 2011).

On appeal to the Ohio Court of Appeals, Mobley argued:

I. THE TRIAL COURT ERRED PREJUDICIALLY BY GRANTING THE PROSECUTION'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DEFENSE WITNESS DR. LEHRER, WHO WOULD HAVE TESTIFIED TO PSYCHOLOGICAL FACTORS RELEVANT TO THE ACCUSED'S MENTAL STATE AT THE TIME OF COMMISSION OF THE ALLEGED CRIMINAL OFFENSES.

II. THE TRIAL COURT ERRED PREJUDICIALLY BY EXCLUDING THE DEFENSE EVIDENCE FROM THE JURY'S CONSIDERATION.

III.  THE TRIAL COURT ERRED PREJUDICIALLY BY IMPOSING
SUBSTANTIAL CONSECUTIVE SENTENCES TOTALING 24 YEARS
WHEN THERE WAS ONLY ONE SET OF CRIMINAL OFFENSES IN
SHOOTING THE VICTIM, NOT A SERIES OF SEPARATE CRIMINAL
OFFENSES, AND THE TRIAL COURT FAILED TO CONSIDER THE
MENTAL HEALTH ISSUES RAISED BY THE DEFENSE IN MITIGATION
OF THE APPELLANT'S CRIMINAL RESPONSIBILITY IN SHOOTING THE
VICTIM.

IV.  APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF
THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION
TEN OF THE OHIO CONSTITUTION.

*Id.* at *5.  The Ohio Court of Appeals subsequently affirmed Mobley's convictions on appeal.  *Id.* at
*19.

Mobley then sought leave to appeal with the Supreme Court of Ohio raising the same issues

which he presented to the Ohio Court of Appeals.  (Doc. No. 15, Ex. 16, 17).  The Supreme Court

of Ohio denied Mobley leave to appeal.  *State v. Mobley*, 947 N.E.2d 684 (Ohio 2011) (table).

While his direct appeal was still pending, Mobley filed a pro se petition to set aside or vacate

his sentence pursuant to Ohio Revised Code § 2953.21, asserting his trial counsel was ineffective in

failing to offer the testimony of Richland County Jail nurse Crystal Harris, Richland County Jail

clergyman Lee Beer, and Dr. Douglas Lehrer.  (Doc. No. 15,  Ex. 20).  In support of his application,

Mobley submitted:  (1) a March 2010 letter from Beer, describing his relationship with Mobley,

offering his opinion regarding Mobley's character, and stating he was "not allowed to be a character

witness" at Mobley's trial, despite offering to do so; and (2) a November 2009 letter from Dr. Lehrer

to Mobley's trial counsel, in which Dr. Lehrer reports the results of his psychiatric examination of

Mobley, and speculates Mobley's actions may have been caused by medications he was taking for

depression and insomnia.

6

In September 2010, the trial court denied the § 2953.21 petition on the merits.  (Doc. No. 15, Ex. 24).  Mobley filed a notice of appeal from the trial court's decision.  On appeal, Mobley argued the trial court abused its discretion in denying his claims for relief based on grounds of ineffective assistance of counsel.  (Doc. No. 15, Ex. 25, 26).

In July 2011, the Ohio Court of Appeals affirmed the trial court's decision denying Mobley's § 2953.21 petition.  (Doc. No. 15, Ex. 28).  Mobley filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio.  (Doc. No. 15, Ex. 29, 30).  In November 2011, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal.  (Doc. No. 15, Ex. 32).

In April 2011, Mobley filed a pro se application to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B).  (Doc. No. 15, Ex. 33).  He argued is appellate counsel was ineffective in failing to raise the following issues on direct appeal:

> I.  Due process of Law violations which occurred when Defendant-Appellant's trial counsel failed to contact Lee R. Beer and Douglas S. Lehrer, MD, as potential witnesses at the sentencing hearing.
>
> II.  The Trial Court erred in sentencing Appellant for a violation of R.C. § 2903.02(A) & R.C. 2923.02(A), and as well as for a violation of R.C. 2903.11(A)(2), as the same were subject to merger and as not merging the same violated Double Jeopardy.

In support of his application, Mobley submitted the March 2010 letter from Beer and the November 2009 letter from Dr. Lehrer which had accompanied his § 2953.21 petition.

In May 2011, the Ohio Court of Appeals denied Mobley's Rule 26(b) application.  (Doc. No. 15, Ex. 35).  Mobley then filed a notice of appeal and a memorandum in support of jurisdiction with the Supreme Court of Ohio.  (Doc. No. 15, Ex. 36, 37).  In September 2011, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal.  (Doc. No. 15, Ex. 38).

7

In August 2011, Mobley filed a motion to correct his sentence in the state trial court, arguing the trial court had erred in imposing "consecutive sentences for allied offenses of similar import (Attempted Aggravated Murder, Aggravated Burglary, Discharging a Firearm in to [sic] a Habitation, and Attempted Aggravated Murder[)]."  (Doc. No. 15, Ex. 39).  The trial court denied the motion, finding each offense was "a separate and distinct act that was part of a course of conduct."  (Doc. No. 15, Ex. 42).  The trial court also noted Mobley had conceded in his direct appeal the offenses were not allied offenses of similar import.  Thus, his claim was barred by res judicata.

Mobley appealed from the state trial court's decision.  The Ohio Court of Appeals affirmed the trial court's decision.  *State v. Mobley*, No. 11CA83, 2012 WL 762239 (Ohio Ct. App. Mar. 7, 2012).  Mobley filed a notice of appeal with the Supreme Court of Ohio.  (Doc. No. 15, Ex. 48, 49).  The Supreme Court of Ohio declined jurisdiction and dismissed the appeal.  *State v. Mobley*, 969 N.E.2d 271 (Ohio 2010) (table).

## II. PROCEEDINGS IN THIS COURT

On November 14, 2012, Mobley filed his § 2254 petition raising the following grounds for relief:

> I.  The trial court erred prejudicially by granting the government[']s Motion in Limine to exclude the testimony of defense witness Dr. Lehrer, who would have testified to psychological factors to the accused's mental state at the time of the commission of the alleged offenses.
>
> II.  Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
>
> III.  Petitioner was sentenced for Attempted Murder and Felonious Assault, as the same were subject to merger and as not merging the same violated Double Jeopardy under the Fifth Amendment to the United States Constitution.
>
> IV.  Due process of law violations occurred when petitioner's court-appointed counsel failed to contact Lee R. Beer and Douglas S. Lehrer, M.D., as potential witnesses at the sentencing hearing.

8

> V.  Petitioner was denied effective assistance of appellate counsel in violation of the
> Sixth and Fourteenth Amendments of the United States Constitution.

(Doc. No. 1).  The petition was referred to Magistrate Judge Vecchiarelli who recommended the

petition be dismissed.  Mobley filed objections to the Magistrate Judge's report.  Upon de novo

review, I agree with the Magistrate Judge that Mobley is not entitled to habeas corpus relief.

## III.  STANDARD OF REVIEW

Last month the Supreme Court of the United States reemphasized the standard federal

courts must use regarding petitions for writs of habeas corpus:

> Section 2254(d) of Title 28 provides that "[a]n application for a writ of
> habeas corpus on behalf of a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim . . . resulted in a
> decision that was contrary to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme Court of the United States."
> "This standard," we recently reminded the Sixth Circuit, "is 'difficult to meet.'"
> *Metrish v. Lancaster*, 569 U.S. ——, —— (2013) (slip op., at 4–5). "'[C]learly
> established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings,
> as opposed to the dicta, of this Court's decisions.'"  *Howes v. Fields*, 565 U.S. ——, —
> — (2012) (slip op., at 4) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct.
> 1495, 146 L. Ed.2d 389 (2000)).  And an "unreasonable application of" those
> holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error"
> will not suffice.  *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S. Ct. 1166, 155 L. Ed.2d
> 144 (2003).  Rather, "[a]s a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility for fairminded
> disagreement."  *Harrington v. Richter*, 562 U.S. ——, —— (2011) (slip op., at 13).

*White v. Woodall*, No. 12-749, 2014 WL 1612424, at *4 (U.S. Apr. 23, 2014).

## IV.  EXCLUSION OF DEFENSE WITNESS

In his objections to the Magistrate Judge's report, Mobley argues the decision of the Ohio

Court of Appeals regarding the exclusion of the testimony of Dr. Lehrer is contrary to the Supreme

Court's decision in *Crane v. Kentucky*, 476 U.S. 683 (1986).  In *Crane*, the Court stated:

9

We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed.2d 674 (1986). Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed.2d 297 (1973). Nonetheless, without "signal[ing] any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures," we have little trouble concluding on the facts of this case that the blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial. *Id.*, at 302–303, 93 S. Ct., at 1049–1050.

*Id.* at 689–90.

As the Sixth Circuit discussed in *Wong v. Money*, 142 F.3d 313, 323 (6th Cir. 1998):

Ohio does not recognize the defense of diminished capacity, and a defendant may not offer expert psychiatric testimony, unrelated to the presentation of an insanity defense, to show that she lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime. *Ohio v. Wilcox*, 70 Ohio St.2d 182, 436 N.E.2d 523, 533 (1982). In *Wilcox*, the Ohio Supreme Court stated that "the diminished capacity theory forcefully challenges conventional concepts of culpability and 'involve(s) a fundamental change in the common law theory of responsibility.'" *Id.* (quoting *Fisher v. United States*, 328 U.S. 463, 476, 66 S. Ct. 1318, 1324–25, 90 L. Ed. 1382 (1946)). The court undertook a comprehensive review of the diminished capacity defense, including the history of the defense and the purposes it was designed to serve. *See id.* 436 N.E.2d at 525–30. The court stated:

"While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as was sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative on the point for which it was asserted."

*Id.* at 529 (quoting *Steele v. Wisconsin*, 97 Wis.2d 72, 294 N.W.2d 2, 13 (1979)); *see also Cooey*, 544 N.E.2d at 906 ("The *Wilcox* rule is based on a mistrust of the ability of psychiatry to accurately 'fine tune' degrees of capacity among offenders who are sane— i.e., who have the minimal capacity to act voluntarily."). The state supreme

10

court also noted:

> In light of the linedrawing difficulties courts and juries face when assessing expert evidence to make the "bright line" insanity determination, we are not at all confident that similar evidence will enable juries, or the judges who must instruct them, to bring the blurred lines of diminished capacity into proper focus so as to facilitate principled and consistent decision-making in criminal cases. In short, the fact that psychiatric evidence is admissible to prove or disprove insanity does not necessarily dictate the conclusion that it is admissible for purposes unrelated to the insanity defense.

*Wilcox*, 436 N.E.2d at 530.

*Wilcox* is not "contrary to, or involved an unreasonable application of, clearly established Federal law." *White*, 2014 WL 1612424, at *4 (citation omitted). *Crane* does not prohibit the state courts of Ohio from refusing to recognize the diminished capacity defense. To the contrary, the Supreme Court explicitly stated "we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane*, 476 U.S. 689. Because *Wilcox* is not contrary to Supreme Court precedent, Mobley is not entitled to habeas corpus relief on this issue.

Mobley also argues *Wrong* is contrary to *Bradshaw v. Richey*, 546 U.S. 74 (2005). In *Bradshaw*, the Court stated the interpretation of state law by a state court is binding on a federal court in a habeas corpus case. *Id.* at 76. This holding does not overturn *Wrong*. To the contrary, *Bradshaw* supports *Wrong's* analysis. The argument is without merit.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Mobley contends his trial counsel was ineffective for failing to pursue a conviction for the lesser-included offense of reckless homicide. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984),

11

the Court set forth the standard by which courts are to evaluate ineffective assistance of counsel claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The Ohio Court of Appeals stated that under Ohio law, reckless homicide is a lesser included offense of aggravated felony murder.  *Mobley*, 2011 WL 304360, at *18.  The court noted, however, the lesser included offense charge is only required when there is evidence which would "reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense." *Id.* (internal quotation marks and citation omitted).  The court stated the "instruction is not warranted every time there is some evidence presented to support the lesser offense." *Id.* (internal quotation marks and citation omitted).  "Rather, a court must find sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." *Id.* (internal quotation marks and citation omitted).

In reviewing the evidence presented at trial, the Ohio Court of Appeals stated:

> There simply is no evidence upon which the jury could find that appellant recklessly attempted to kill Deborah Tolley.  Appellant purchased a handgun on the day in question.  Appellant fired that gun through the front door of Deborah Tolley's apartment.  He then shot off the doorknob and locking mechanism and forced his way inside.  He was standing a few feet away from Deborah when he raised the gun and fired one shot.  Appellant told her that if she dropped her cell phone he would take her to the hospital.  Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment

building to his car. Based upon the record, there was no reasonable basis for the jury
to find that appellant recklessly shot at Ms. Tolley.

*Id.*

The Ohio Court of Appeal, in applying the *Strickland* standard, concluded trial counsel was not
ineffective on this issue.

The facts, as summarized by the Ohio Court of Appeals, establishes that Mobley was not
entitled to a lesser included offense instruction because the evidence did not warrant such an
instruction under Ohio law. Where the state court has made factual findings, I must presume the
correctness of the factual determinations and will defer to them unless they are clearly erroneous. 28
U.S.C. § 2254(e)(1); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). My review is "limited to
the record that was before the state court that adjudicated the claim on the merits." *Cullen v.
Pinholster*, 131 S. Ct. 1388, 1398 (2011). This is a "highly deferential standard for evaluating state-
court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford
v. Visciotti*, 537 U.S. 19, 24 (2002) (citation and internal quotation marks omitted). The petitioner
carries the burden of proof, *id.* at 25, which is "difficult to meet." *Cullen*, 131 S. Ct. at 1398 (citation
and internal quotation marks omitted).

Because Mobley was not entitled to the lesser included offense instruction as a matter of
state law, counsel's failure to raise the issue did not prejudice Mobley's defense. *See Strickland*, 466
U.S. at 687. Further, Mobley has not failed to show the decision of the Ohio Court of Appeals
regarding his ineffective assistance of trial counsel claim is "contrary to, or involved an
unreasonable application of, clearly established Federal law." *White*, 2014 WL 1612424, at *4
(citation omitted). Thus, Mobley is not entitled to habeas corpus relief on this issue.

## VI. DOUBLE JEOPARDY

In his third issue, Mobley argues the trial court should have merged his convictions for

13

attempted murder and felonious assault.  The failure to do so, he asserts, violated his Double

Jeopardy rights under the Fifth Amendment to the United States Constitution.  Mobley has failed to

object to the Magistrate Judge's report regarding this issue.  In *United States v. Walters*, 638 F.2d 947,

949–50 (6th Cir. 1981), the court held a party must file timely objections to a magistrate judge's

report with the district court in order to preserve the right to appeal.  The purpose of such

objections is to provide the district court "with the opportunity to consider the specific contentions

of the parties and to correct any errors immediately."  *Id.* at 950.  The Supreme Court upheld this

rule in *Thomas v. Arn*, 474 U.S. 140 (1985).  The Court stated "[t]he filing of objections to a

magistrate's report enables the district judge to focus attention on those issues–factual and legal–that

are at the heart of the parties' dispute."  *Thomas*, 474 U.S. at 147.

In *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987), the court

stated "only those specific objections to the magistrate's report made to the district court will be

preserved for appellate review; making some objections but failing to raise others will not preserve

all the objections a party may have."  Because Mobley failed to object to the Magistrate Judge's

analysis regarding his Double Jeopardy argument, the claim is deemed to be waived.  *Thomas*, 474

U.S. at 147; *Smith*, 829 F.2d at 1373; *Walters*, 638 F.2d at 949–50.

## VII.  FAILURE TO CONTACT

Mobley alleged due process violations when this attorney failed to contact Beer and Dr.

Lehrer as potential witnesses at his sentencing hearing.  Mobley again failed to object to the

Magistrate Judge's analysis regarding this issue.  Therefore, the issue is deemed waived.  *Thomas*, 474

U.S. at 147; *Smith*, 829 F.2d at 1373; *Walters*, 638 F.2d at 949–50.

## VIII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Mobley asserts his appellate counsel was ineffective for failing to argue his merger argument

(Claim III in his habeas corpus petition) and his ineffective assistance of trial counsel argument

regarding calling Beer and Dr. Lehrer as potential witnesses (Claim IV in his habeas corpus petition).

Mobley fails to object to the Magistrate Judge's analysis regarding the ineffective assistance of

counsel claim as it applies to trial counsel's failure to call Beer and Dr. Lehrer as witnesses.  This

issue is also deemed waived.  *Thomas*, 474 U.S. at 147; *Smith*, 829 F.2d at 1373; *Walters*, 638 F.2d at

949–50.

      An ineffective assistance of appellate counsel claim requires a petitioner to show counsel's

performance was deficient, and the deficient performance was prejudicial.  *See Smith v. Robbins*, 528

U.S. 259, 285 (2000).  In evaluating the performance of appellate counsel, it is well settled "appellate

counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from

among them in order to maximize the likelihood of success on appeal."  *Id.* at 288.  Generally, the

presumption of effective assistance of counsel will not be overcome unless the ignored issues are

clearly stronger than those presented on appeal.  Further, to demonstrate prejudice in this context, a

petitioner must show a reasonable probability his claims would have succeeded on appeal.  *Id.* at

285–86.

      The trial court imposed the following sentence:

> Count 1, attempted aggravated murder, ten years in prison; Count 2, no conviction;
> Count 3, you weren't convicted; Count 4, ten years in prison, that's aggravated
> burglary; Count 5, which is the discharge into a habitation, I'm adding an additional
> year for that.  Count 6 is felonious assault, I'm not adding a sentence to that, it's an
> allied offense of similar import.  The total of Counts 1, 4 and 5 are consecutive to
> each other.  There is three years mandatory consecutive imprisonment for the gun
> specification.  That makes your total sentence of twenty-four years.

(Doc. No. 15–6, p. 552).

      The sentencing transcript shows the trial court did not impose a sentence for Mobley's

felonious assault conviction.  The conviction was merged with the attempted aggravated murder

conviction.  The trial court recognized the felonious assault conviction was a lesser included offense and refused to sentence Mobley on the charge.  Because no Double Jeopardy violation occurred, appellate counsel did not err in failing to present the argument on appeal.  Thus, Mobley has not shown a reasonable probability his claim would have succeeded on appeal.  *Smith*, 528 U.S. at 285–86.

Mobley feels the trial court's sentence is contrary to *Ball v. United States*, 470 U.S. 856, 863–65 (1985).  *Ball* concerned the issue of whether Congress intended a convicted felon to be punished under both 18 U.S.C. §§ 922(h) and 1202(a)(1).  *Ball* is inapplicable to this case.

## IX.  CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner is not entitled to a certificate of appealability as a matter of right, but must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner need not demonstrate he should prevail on the merits.  Rather, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Mobley's petition has not met this standard.

For the reasons set forth in this decision, I certify there is no basis on which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

## X.  CONCLUSION

Accordingly, the Magistrate Judge's report and recommendation (Doc. No. 23) is adopted and the petition for a writ of habeas corpus is dismissed.

So Ordered.

 s/ Jeffrey J. Helmick
United States District Judge

17